John Nodecker,                                   :
                        Petitioner              :
                                                 :
             v.                                  :    No. 639 M.D. 2022
                                                 :    Argued:  September 9, 2024
Donna Prokay, Bill Murry, Mark                   :
Anderson, Kathy Setlock, John/Jane              :
Does 1-3, Manheim Township School               :
District, Education Secretary Noe                :
Ortega, Education Secretary Eric                 :
Hagarty, and Department of                       :
Education Open Records Officer,                  :
Angela Riegel,                                   :
                        Respondents             :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER              FILED:  August 11, 2025


Before this Court is John Nodecker's (Petitioner) Petition for Review (Petition) asserting an as-applied constitutional challenge to Section 17.2 of the Educator Discipline Act (Act),[1] 24 P.S. § 2070.17b, and seeking declaratory, injunctive, and mandamus relief against Noe Ortega and Eric Hagarty, former Secretaries of the Pennsylvania Department of Education (PDE), and Angela Riegel (Riegel), Office of Open Records (OOR) Officer for PDE (collectively, PDE

---

[1] Act of December 12, 1973, P.L. 397, *as amended*, added by Section 11 of the Act of December 18, 2013, P.L. 1205, 24 P.S. § 2070.17b.

Respondents) and PDE Respondents' preliminary objections (POs) thereto. Also before this Court, in our ancillary jurisdiction,[2] are Petitioner's various tort law claims against Manheim Township School District (District) and some of its current and former employees, including Donna Prokay, Bill Murry, Mark Anderson, Kathy Setlock, and John/Jane Does (collectively, District Respondents), and District Respondents' POs and Respondent Prokay's Motion for Judgment on the Pleadings (Motion). This matter was originally filed in the Court of Common Pleas of Lancaster County (common pleas) but was transferred to this Court based on its conclusion that the Petition included claims against Respondents Ortega and Hagarty in their official capacities, which would give this Court original jurisdiction under Section 761(a) of the Judicial Code, 42 Pa.C.S. § 761(a).[3]

PDE Respondents' POs claim Petitioner has failed to aver personal involvement by Respondents Hagarty and Ortega, PDE Respondents have been misjoined, Petitioner failed to exhaust a full, complete, and adequate statutory remedy by not appealing the denial of his Right-to-Know Law[4] (RTKL) request, and Petitioner has failed to state viable claims under the First Amendment, U.S. CONST. amend. I, and under 42 U.S.C. § 1983 (Section 1983).[5] District Respondents, in their

---

[2] Section 761(c) of the Judicial Code relevantly provides that "the Commonwealth Court shall have ancillary jurisdiction over any claim or other matter which is related to a claim or other matter otherwise within its exclusive original jurisdiction." 42 Pa.C.S. § 761(c).

[3] This Court issued an Order on February 27, 2024, acknowledging the transfer and stating that we would treat Petitioner's Amended Complaint filed in common pleas as a Petition for Review filed in this Court's original jurisdiction. (*See* 2/27/2024 Order.)

[4] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

[5] Section 1983 provides, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights,

**(Footnote continued on next page…)**

2

official and individual capacities, filed POs, asserting, among other bases, insufficiency of pleading, expiration of statute of limitations, immunity under various theories, legal insufficiency (demurrer) of all the counts, and that Petitioner's claims are contractually barred. In addition, Respondent Prokay, in her individual capacity, has filed the Motion, maintaining she is entitled to judgment in her favor for many of the reasons asserted in the District Respondents' POs. Notwithstanding common pleas' conclusion, Petitioner continues to assert that he has not sued Respondents Ortega and Hagarty in their official capacities and that all PDE Respondents are sued in their individual, not official, capacities. Petitioner further argues the POs and Respondent Prokay's Motion are without merit and should be overruled and dismissed, respectively.

Upon review, we conclude this Court lacks original jurisdiction over the claims against PDE Respondents, whom Petitioner has sued in their individual capacities, which, in turn, leaves this Court without ancillary jurisdiction over the remaining claims. *See* Section 761(a)(1), (c) of the Judicial Code, 42 Pa.C.S. § 761(a)(1), (c). Accordingly, we are constrained to dismiss the Petition as required by *Hill v. Pennsylvania Department of Environmental Protection*, 679 A.2d 773, 774 n.1 (Pa. 1996) (providing that where a matter is transferred from common pleas to this Court, this Court should not retransfer if it concludes it lacks original jurisdiction, but should dismiss the matter and the parties should take an appeal enabling Supreme Court review).

---

privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

## I.   THE PETITION

In the Petition, Petitioner avers as follows.[6]   Petitioner served as Superintendent of the District from July 2014 until January 2016, when he entered into a Separation Agreement with the District.   (Petition ¶¶ 14, 18.)[7]   Before resigning, District Respondents "initiated and perpetrated false claims of gender-based and age-based harassment" against him, which internal and external investigations deemed were without merit and no disciplinary action had been taken. (*Id.* ¶¶ 16-18.)   District Respondents "made a promise to [Petitioner] that the [Separation] Agreement would constitute an end to [District Respondents'] false

---

[6] When this Court considers preliminary objections,

> we must accept as true all well-pleaded material allegations in the petition for review, as well as all inferences reasonably deduced therefrom.  The Court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion.  In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them.

*Pa. Virtual Charter Sch. v. Dep't of Educ.*, 244 A.3d 885, 889 (Pa. Cmwlth. 2020) (quoting *Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Cmwlth. 2010)) (emphasis omitted).  "In cases where preliminary objections would result in the dismissal of a cause of action, preliminary objections should only be sustained where it is clear and free from doubt that the pleader has not pleaded facts sufficient to establish his right to relief."  *P.J.S. v. Pa. State Ethics Comm'n*, 669 A.2d 1105, 1108 (Pa. Cmwlth. 1996).

"A demurrer tests the legal sufficiency of" a petition for review and "admits every well-pleaded material fact set forth in the [petition,] as well as all inferences reasonably deducible." *Chester Cmty. Charter Sch. v. Dep't of Educ.*, 996 A.2d 68, 74 (Pa. Cmwlth. 2010).  "The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible, and any doubt should be resolved in favor of overruling the demurrer."  *Id.*

[7] Petitioner does not attach the Separation Agreement to the Petition, which he refers to as both a "Separation Agreement" and "Settlement Agreement," despite it being referenced throughout the Petition.  Numerous District Respondents attach the Separation Agreement to their POs and base some of their POs on a release contained in that agreement.

allegations in relation to [Petitioner] in exchange for [Petitioner]'s resignation." (*Id.* ¶ 51.) In December 2016, Petitioner received a letter from PDE "stemming from an Educator Misconduct Complaint that was initiated by all individual [District Respondents] acting with the consent and authority of [the] District." (*Id.* ¶ 19.) This letter stated that Petitioner "would be charged with violating [a] criminal statute [under Section 17.2 of the Act] if [Petitioner] disclosed or discussed the existence of an investigation against him and/or if [Petitioner] disclosed or discussed the complainants that initiated the investigation against [Petitioner]." (*Id.*) In March 2021, PDE informed Petitioner that there was no merit in the allegations made against him. (*Id.* ¶ 22.) Petitioner claimed he "expend[ed] considerable legal resources in defending the false allegations" and his "prospects for gaining alternative employment" were hindered. (*Id.* ¶ 21.)

Petitioner filed a RTKL request with PDE "to release documentation as to its baseless investigation," which Riegel denied under the Act. (*Id.* ¶¶ 24, 28.) Thus, Petitioner asserts he "is still in the process of discovering the full extent of all [the] allegations." (*Id.* ¶ 24.) Because Petitioner cannot speak about the allegations against him without fear of criminal prosecution, he asserts the Act violates his First Amendment rights to free speech and to the redress of grievances. (*Id.* ¶ 29.)

Petitioner asserts in Counts I through IV claims of libel, breach of implied contract, promissory estoppel, and malicious prosecution, respectively, against District Respondents. Petitioner avers that each District Respondent "engaged in willful misconduct and acted outside of the scope of his or her employment and/or elected office," with respect to the filing of allegedly false reports of gender- and age-based discrimination, which was the basis for the Educator Misconduct Complaint. (*Id.* ¶¶ 16, 21, 26.) Petitioner also asserts that because his RTKL request

was denied based on the Act, he "has not [] yet discovered all" libelous actions, breaches of implied contract, false promises, or the facts underlying the malicious prosecution by District Respondents. (*Id.* ¶¶ 35, 46, 55, 61.)

Count V is directed only at PDE Respondents, "in their individual capacities," with Ortega and Hagarty also being sued in their "policymaker capacities." (*Id.* ¶¶ 27, 65, 69.) Pursuant to Section 1983, Petitioner requests that this Court declare the Act is unconstitutional as applied to Petitioner and to enjoin PDE Respondents from enforcing it. (*Id.*, Wherefore Clause.) Additionally, Petitioner requests that we order PDE Respondents to disclose the complainants from the investigation. (*Id.*)

## II. JURISDICTION

We first consider whether common pleas correctly transferred the matter to this Court based on its conclusion that the policymaker claims against Respondents Ortega and Hagarty are official capacity claims, which would provide this Court with original jurisdiction under Section 761(a)(1) of the Judicial Code. Questions of subject matter jurisdiction are not waivable and may be raised by the court on its own motion because such questions relate to the court's competency to determine the case before it. *Domus, Inc. v. Signature Bldg. Sys. of PA, LLC*, 252 A.3d 628, 636 (Pa. 2021).

In addition to the POs outlined above, PDE Respondents also asserted to common pleas that Petitioner's policymaker claims against Respondents Ortega and Hagarty were official capacity claims, falling within this Court's original jurisdiction under Section 761(a)(1) of the Judicial Code. Petitioner denied that the claims against any of the PDE Respondents were official capacities claims, asserting that they were individual capacity claims, including those that Petitioner described as

6

"*Monell*"[8] policymaker claims. (Petitioner's Answer to PDE Respondents' POs ¶¶ 19-20, 26-27, 29, 40 & at 26-27; Petitioner's Brief in Opposition to PDE Respondents' POs at 3-4.) Petitioner pointed to the Petition's allegations, which contain no reference to official capacity claims, and reasserted that his claims against PDE Respondents were individual capacity claims that fell within common pleas' jurisdiction. (Petitioner's Answer to PDE Respondents' POs ¶¶ 19-20, 26-27, 29, 40; Petitioner's Brief in Opposition to PDE Respondents' POs at 3-4.)

Common pleas agreed with PDE Respondents that Petitioner's policymaker claims against Respondents Ortega and Hagarty were official capacity claims under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Common pleas explained Petitioner did not dispute that Respondents Hagarty and Ortega were Commonwealth officers and that Petitioner

> ple[d] [a Section] 1983 claim against the former [S]ecretaries of the [PDE] in their individual capacities, but **not in the sense of acting outside of the scope of their authority as the Secretary of Education**. [Petitioner] seeks declaratory and injunctive relief against the former [S]ecretaries in **what is really ple[d] as an official capacity claim** under [Section] 1983 for injunctive relief and not for monetary damages. The Commonwealth Court has original jurisdiction.

(Common pleas' Opinion (Op.) at 4-5 (emphasis added).) Common pleas thus sustained PDE Respondents' PO as to jurisdiction and transferred the matter to this Court pursuant to Section 5103(a) of the Judicial Code, 42 Pa.C.S. § 5103(a) (directing the transfer of improperly filed matters to the court with jurisdiction).

While Petitioner does not directly challenge common pleas' transfer, he continues to argue, as reflected in his oral arguments to this Court, that he is **not**

---

[8] *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658 (1978).

7

suing any of the PDE Respondents in their official capacities. Instead, he insists that the claims against those Respondents are against them in their individual capacities. We view the continuation of these arguments as questioning common pleas' conclusion that this Court has original jurisdiction. And, even if they are not, we are authorized to examine common pleas' conclusion ourselves because it relates to our subject matter jurisdiction. *Domus, Inc.*, 252 A.3d at 636; *see also Caldwell v. Dep't of Corr.* (Pa. Cmwlth., No. 251 M.D. 2009, filed April 9, 2010), slip op. at 6.[9]

We have "original jurisdiction in only a narrow class of cases." *Stackhouse v. Commonwealth*, 832 A.2d 1004, 1007 (Pa. 2003). That original jurisdiction is set forth in Section 761 of the Judicial Code, which provides, in pertinent part:

> (a) General Rule.—The Commonwealth Court shall have original jurisdiction of all civil actions or proceedings:
>
>> (1) Against the Commonwealth government, including any officer thereof, acting in his **official capacity** . . . .
>
> . . . .
>
> (c) Ancillary matters.—. . . . To the extent prescribed by general rule the Commonwealth Court shall have ancillary jurisdiction over any claim or other matter which is related to a claim or other matter otherwise within its exclusive original jurisdiction.

42 Pa.C.S. § 761 (emphasis added).

Thus, under Section 761(a)(1), this Court's original jurisdiction is predicated first on the identity of the parties, the Commonwealth or an officer thereof, and, for the latter, the capacity in which they are being sued, their official capacity. 42

---

[9] This unreported opinion is considered for its persuasive value pursuant to Pennsylvania Rule of Appellate Procedure 126(b), Pa.R.A.P. 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

Pa.C.S. § 761(a)(1). This jurisdiction is further narrowed by other subsections of Section 761(a) that are not relevant here, but Section 761(c) provides this Court with ancillary jurisdiction over claims or matters that are **related** to claims that are within this Court's exclusive original jurisdiction. 42 Pa.C.S. § 761(c); *Stackhouse*, 832 A.2d at 1007.

The Petition expressly asserts claims against PDE Respondents in their "individual capacities," and those claims do not fall within this Court's original jurisdiction. And neither PDE Respondents nor common pleas assert otherwise. The question is whether the "policymaker" claims against Respondents Ortega and Hagarty were "**really ple[d]** as [] official capacity claim[s]," as common pleas found, and not as individual capacity claims, as Petitioner argues. (Common pleas' Op. at 5 (emphasis added).) Common pleas appears to have based its conclusion on the belief that an individual capacity claim had to plead that Respondents Ortega and Hagarty were "acting **outside of the scope of their authority as the Secretary of Education**." (*Id.* at 4 (emphasis added).) This conclusion, however, is inconsistent with case law, which recognizes individual capacity claims against government officials even for actions taken within the scope of their authority and policymaker claims against government officials in their individual capacities, as well as the Petition's averments, and Petitioner's arguments disavowing any official capacity claims against PDE Respondents.

The distinction between personal (individual) and official capacity claims has been a topic of many decisions. In *Hafer v. Melo*, the United States Supreme Court explained the contours of personal- and official-capacity suits as follows:

> In *Kentucky v. Graham,* 473 U.S. 159 . . . (1985), the Court sought to eliminate lingering confusion about the distinction between personal- and official-capacity suits. We emphasized that official-capacity suits

9

"'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.*[] at 165 . . . . (quoting *Monell* . . . , 436 U.S. [at] 690, n.55 . . . ). Suits against state officials in their official capacity therefore should be treated as suits against the State. [*Id.*] at 166 . . . . Indeed, when officials sued in this capacity in federal court die or leave office, their successors automatically assume their roles in the litigation. *See* Fed.R[.]Civ.P[.] 25(d)(1); Fed.R[.] App.P[.] 43(c)(1) . . . . Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, "the entity's 'policy or custom' must have played a part in the violation of federal law." *Graham*, [473 U.S.] at 166 . . . (quoting *Monell*, [] 436 U.S.[] at 694 . . . ). . . .

Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law. Thus, "[o]n the merits, to establish personal liability in a [Section] 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Id.*[] at 166 . . . .

. . . .

*Will* [*v. Michigan Department of State Police*, 491 U.S. 58 (1989),] itself makes clear that the distinction between official-capacity suits and personal-capacity suits is more than "a mere pleading device."

502 U.S. 21, 25-27 (1991) (emphasis omitted).

In *Hafer*, the Supreme Court rejected the argument that no individual capacity claim exists where state officials are acting within the scope of their authority. *Id.* at 28-29. The Supreme Court explained this position was not supported by the broad language of Section 1983 or its purpose "to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, **whether they act in accordance with their authority or misuse it**." *Id.* at 28 (citation omitted) (emphasis added). Indeed, accepting this argument, the High Court held, would result in absolute immunity from "personal liability for acts within their authority and necessary to fulfilling governmental responsibilities,"

10

which is contrary to precedent. *Id.* Accordingly, common pleas erred here when it linked the concept of asserting an individual capacity claim to whether Respondents Ortega and Hagarty were "acting **outside of the scope of their authority as the Secretary of Education**," (common pleas' Op. at 4 (emphasis added)). *Hafer*, 502 U.S. at 28-29.

It is also well settled that a Section 1983 "policymaker" claim can be filed against government officials in their individual capacity. *See, e.g.*, *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316-17 (3d Cir. 2014), *rev'd per curiam*, *Taylor v. Barkes*, 575 U.S. 822 (2015); *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586-87 (3d Cir. 2004); *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989); *Fetters v. Mearkle* (M.D. Pa., No. 1:15-cv-1935, filed Jan. 11, 2016), 2016 WL 11586601, at *8.[10] Policymaker claims made against a defendant in their individual capacity may include assertions that the defendant **developed inadequate policies/customs** or failed to adequately supervise their subordinates. *A.M. ex rel. J.M.K.*, 372 F.3d at 585-86. Individual defendants who are policymakers may be liable under Section 1983 if it is shown that such defendants, "**with deliberate indifference to the consequences, established and maintained a policy**, practice or custom which directly caused [the] constitutional harm." *Stoneking*, 882 F.2d at 725 (emphasis added); *see also Barkes*, 766 F.3d at 316-17 (same); *A.M. ex rel. J.M.K.*, 372 F.3d at 585-86 (same).[11] Thus, the fact that

---

[10] "[T]he pronouncements of the lower federal courts have only persuasive, not binding, effect on the courts of this Commonwealth . . . ." *In re Stevenson*, 40 A.3d 1212, 1221 (Pa. 2012).

[11] A supervisory government official may also be personally liable under Section 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations. *Barkes*, 766 F.3d at 316-17; *A.M. ex rel. J.M.K.*, 372 F.3d at 586; *Baker v. Monroe Township,* 50 F.3d 1186, 1190-91 (3d Cir. 1995); *Fetters*, 2016 WL 11586601, at *9. "'Failure to' claims—failure to train, **(Footnote continued on next page…)**

Petitioner asserts claims against Respondents Ortega and Hagarty as "policymakers" does not mean he "really ple[d] . . . official capacity claim[s]," that should be heard in this Court, as common pleas found. (Common pleas' Op. at 5.)

Finally, throughout the proceedings before both common pleas and this Court, Petitioner has continuously and consistently argued that the Petition does **not** assert any official capacity claims against PDE Respondents. Reviewing the Petition, we discern **no** averments reflecting Petitioner's intent to assert an official capacity claim against either Respondents Ortega or Hagarty. Common pleas focused on what, in its view, Petitioner was "really plead[ing]," (*id.*), rather than what **was** pled. However, with the benefit of the consistency of Petitioner's arguments in both common pleas and this Court, we must take Petitioner and his averments at their word, which is that he is **not intending to bring any official capacity claims against the PDE Respondents**. *See Steiner v. Markel*, 968 A.2d 1253, 1260 (Pa. 2009) ("The courts should not recast a pleading in a way not intended by the parties.").

Because we conclude that the Petition does not assert any claims against Respondents Ortega and Hagarty in their official capacity, this Court lacks original jurisdiction under Section 761(a)(1) of the Judicial Code. Additionally, because there is no "matter . . . otherwise within [our] exclusive original jurisdiction" before this Court, we cannot exercise ancillary jurisdiction over the Petition's other claims. 42 Pa.C.S. § 761(c).

---

failure to discipline, or . . . failure to supervise—are generally considered a subcategory of policy or practice liability." *Barkes*, 766 F.3d at 316-17.

## III.    DISPOSITION

Having concluded that we lack jurisdiction to consider the Petition under Section 761(a) and (c), the question remains as to what happens with the Petition. Ordinarily, when a court concludes it lacks jurisdiction, it is to transfer the matter to the court with jurisdiction.  42 Pa.C.S. § 5103(a).  However, we will not transfer this matter back to common pleas because our Supreme Court disapproves of "retransferring" a matter to the courts of common pleas that had been transferred to this Court, once we determine this Court lacks jurisdiction.  *Stackhouse*, 832 A.2d at 1007; *Hill*, 679 A.2d at 774 n.1; *Balshy v. Rank*, 490 A.2d 415, 416 (Pa. 1985). Instead, we follow the procedure outlined by the Supreme Court in *Hill*, in which that Court stated:

> The Commonwealth Court was procedurally correct in not ordering this matter retransferred to the [court of common pleas] once it determined that it lacked original jurisdiction over Hill's complaint.  In *Balshy*, this Court noted that it disapproved of one court being transferred a case and then attempting to retransfer the matter back to the court where the matter was originally filed because of lack of jurisdiction.  Instead, the proper practice in such cases would be to dismiss the action and for the parties to **take an appeal**.

*Hill*, 679 A.2d at 774 n.1 (citing *Balshy*, 490 A.2d at 416) (emphasis added).  In *Hill*, upon appeal, the Supreme Court reviewed which court had jurisdiction, and, determining it was not this Court, remanded the complaint to the common pleas court.  Following the Supreme Court's directive, we dismiss the Petition for lack of jurisdiction.

13

## IV. CONCLUSION

For the foregoing reasons, this Court lacks original jurisdiction pursuant to Section 761(a)(1) of the Judicial Code because the Petition does not assert any official capacity claims against a Commonwealth officer, and, absent a claim within our exclusive jurisdiction, we also lack ancillary jurisdiction under Section 761(c). Consistent with *Hill*, instead of retransferring the Petition to common pleas, we dismiss the Petition for lack of jurisdiction.

_____
RENÉE COHN JUBELIRER, President Judge


Judge Fizzano Cannon did not participate in the decision in this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Nodecker,                          :
                 Petitioner    :
                                             :
                 v.                :     No. 639 M.D. 2022
                                             :
Donna Prokay, Bill Murry, Mark          :
Anderson, Kathy Setlock, John/Jane      :
Does 1-3, Manheim Township School       :
District, Education Secretary Noe        :
Ortega, Education Secretary Eric        :
Hagarty, and Department of              :
Education Open Records Officer,         :
Angela Riegel,                          :
                          Respondents   :

## **O R D E R**

**NOW**, August 11, 2025, the Petition for Review filed by John Nodecker in the above-captioned matter is hereby **DISMISSED** due to the lack of original jurisdiction.

_____
RENÉE COHN JUBELIRER, President Judge